EDOK Criminal Complaint (Revised 6/13)

# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

DEREAK LEE EUBANKS,

*Defendant.*

**CRIMINAL COMPLAINT**

**Case No.**   23-MJ-14-GLJ

---

I, Special Agent Pablo Orejuela, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

On or about October 20, 2022, in the Eastern District of Oklahoma, DEREAK LEE EUBANKS, committed the crime of Distribution of Fentanyl, in violation of Title 21, United States Code, Section(s) 841(a)(1) and 841(b)(1)(C).

On or about January 19, 2023, in the Eastern District of Oklahoma, DEREAK LEE EUBANKS, committed the crime of Possession with Intent to Distribute Fentanyl, in violation of Title 21, United States Code, Section(s) 841(a)(1) and 841(b)(1)(C).

I further state that I am a Special Agent with the Drug Enforcement Administration, and that this complaint is based on the following facts:

(See attached Affidavit of Special Agent Pablo Orejuela, which is attached hereto and made a part hereof by reference.)

☒      Continued on the attached sheet.

_____

Pablo Orejuela
Special Agent
Drug Enforcement Administration

Sworn to on January 20, 2023.

GERALD L. JACKSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

_____
Signature of Judicial Officer



**AFFIDAVIT IN SUPPORT OF A COMPLAINT**

1.      I, Pablo Orejuela, a Special Agent with the Drug Enforcement Administration, having been duly sworn, do depose and state the following:

2.      I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since July 17, 2020. Prior to my career with DEA as a Special Agent, I was employed by the State of Texas for approximately five years as a State Trooper with the Department of Public Safety. As a part of this position, I enforced traffic and criminal laws on highways and rural areas. My duties as a Texas State Trooper also included investigating crashes, administering standard field sobriety tests, fugitive arrests, highway criminal interdiction, drafting and obtaining state search warrants and courtroom testimony.

3.      I have attended training specific to the investigation of illegal drug offenses provided by the Texas Department of Public Safety and DEA. My experience includes, but is not limited to roadside investigations, interviews, and executing vehicle searches relating to numerous offenses including drug crimes.  I have consulted with other experienced officers in narcotics investigations, and I have worked with other local, state, and federal law enforcement agencies.

4.      I have written, planned, and executed search warrants, and have testified under oath in court.  Through this training and experience, I have become especially familiar with the techniques and operations of those involved in the drug trade and their day-to-day activities.

5.      My experience includes, but is not limited to patrol, investigations, conducting physical surveillance, and executing search warrants relating to numerous offenses including drug crimes. I have experience in investigating drug cases that have led to the successful prosecution of persons involved in various drug and weapon offenses. I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation referred to in this affidavit and information from discussions with other experienced law enforcement officers.

6.      Based upon the following facts, I believe that probable cause exists to show that **DEREAK LEE EUBANKS** did knowingly and intentionally, possess with intent to deliver a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841 (a)(1) and 841(b)(1)(C).  Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause.

## PROBABLE CAUSE

7.      On October 20, 2022, Special Agent Pablo Orejuela acting in an Undercover Capacity (UC) negotiated the purchase of 50 counterfeit Roxicodone tablets (M30s) containing fentanyl from an unnamed co-conspirator (UNC1). On the same day, UNC1, a second unnamed co-conspirator (UNC2), and **EUBANKS** met with the UC in the parking lot of the Tandy Town Shopping Center at 1734 E. Carl Albert Parkway in McAlester, Oklahoma, within the Eastern District of Oklahoma**. EUBANKS** was sitting in the backseat of the vehicle and provided UNC1 with a plastic bag containing what was later determined to be 14 counterfeit Roxicodone (M30) tablets presumptively containing fentanyl in exchange for $600 of DEA Official Advanced Funds (OAF). Laboratory analysis later confirmed the presence of fentanyl.

8.      On January 9, 2023, the UC contacted **EUBANKS** via Facebook Messenger to negotiate the purchase of 100 counterfeit M30 tablets (fentanyl) for $700. **EUBANKS** advised the UC to contact him on Facebook Messenger when ready because he had to change his phone number. On January 14, 2023**, EUBANKS** contacted the UC via Facebook Messenger to ask if the UC was still going to meet him this week and to let the UC that know that **EUBANKS** had just received a new batch of tablets. The UC confirmed that he would meet with **EUBANKS** on January 18th or

19th. From January 15 through January 19, 2023, **EUBANKS** contacted the UC via Facebook Messenger multiple times to work out details regarding the purchase.

9.      On January 19, 2023, the UC communicated with **EUBANKS** via Facebook Messenger to let him know he was going to be travelling through McAlester to pick up the tablets.  **EUBANKS** and the UC agreed to meet in the parking lot of the Tandy Town Shopping center at 1734 E. Carl Albert Parkway in McAlester to conduct the buy.  At approximately 5:45 PM, **EUBANKS** arrived in a white pickup driven by a male later identified as Cameron Davy. **EUBANKS**, who was sitting in the front passenger seat of the truck got out and entered the UC vehicle where he showed the UC two black plastic pill bottles containing several round shaped blue tablets consistent with counterfeit Roxicodone (M30) tablets containing fentanyl. **EUBANKS** combined the contents of both bottles into one but the UC recognized that **EUBANKS** did not appear to have the previously agreed upon number of tablets (100).  **EUBANKS** counted some of the tablets in the presence of the UC and indicated he had approximately 55 tablets. On his cellular device's calculator, **EUBANKS** multiplied 55 by 7 and showed the UC the number 385. Additionally, **EUBANKS** smoked a portion of one of the tablets in the presence of the UC to show him the quality of the product.

10.    **EUBANKS** placed the tablets he counted in the pill bottle and put them inside the cup holder of the UC vehicle. The UC paid **EUBANKS** $400 for the tablets. However, when exiting the UC's vehicle, **EUBANKS** took the bottle with the tablets with him and left the empty bottle in the cupholder. The UC attempted to get **EUBANKS** attention to recover the tablets but **EUBANKS** and his driver quickly departed the area.

11.    As Davy and **EUBANKS** began to exit the parking lot, DEA MRO agents conducted a traffic stop and detained Davy and **EUBANKS**. During the stop, Resident Agent in Charge Brian Epps observed an opened small black plastic container on the floorboard between **EUBANKS**

feet. RAC Epps found the plastic container contained a small amount of residue. This residue was later field tested and indicated positive for the present of fentanyl. Agents and officers were unable to locate any tablets in the vehicle or along the roadside where the stop occurred. A set of digital scales was found under the driver's side seat and paraphernalia consistent with the smoking fentanyl was found in the front driver and passenger areas of the vehicle. MRO Agents transported **EUBANKS** to the McAlester Regional Health Center to be medically examined due to his recent use of fentanyl. While at the hospital, SA Zach O'Diam and SA Willie Mosley conducted a more thorough search of **EUBANKS'** person. SA O'Diam and SA Mosley observed suspected fentanyl tablets, blue in color within **EUBANKS'** left shoe. A large portion of the tablets were crushed from **EUBANKS'** foot and weight. **EUBANKS** sock was additionally found to be contaminated with suspected fentanyl powder and was later removed. Agents found the total amount of tablets and crushed residue had a total weight of approximately three grams[1] and later field tested positive for the presence of fentanyl.

12.    Based upon my training and experience, that quantity of fentanyl seized is a distribution quantity, and I further believe that probable cause exists to show that **DEREAK LEE EUBANKS** did knowingly and intentionally, possess with intent to deliver a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841 (a)(1) and 841(b)(1)(C).

_____
Pablo Orejuela
Special Agent
Drug Enforcement Administration

SWORN to on this 20th day of January 2023.

_____
 GERALD L. JACKSON
United States Magistrate Judge

---

[1] Counterfeit tablets have been found to have an average weight of approximately .10 to .12 grams per tablet.